## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | |
|---|---|
| ALEXANDER ZAJAC, individually and on behalf of all others similarly situated, | Plaintiff's Address and County<br>225 Lastner Ln Greenbelt MD 20770<br>Prince George's County |
| Plaintiff, | 8:23-cv-03145 |
| - against - | Class Action Complaint |
| UNITED AIRLINES INC., | Defendant's Address<br>233 S Wacker Dr Chicago IL 60606 |
| Defendant | Jury Trial Demanded |

## I.   DANGERS OF CLIMATE CHANGE

1.   World temperature has risen by 1.1 ℃ since 1850 due to greenhouse gas ("GHG") emissions such as carbon dioxide (CO2) from burning fossil fuels.

2.   The impact of climate change on health, economies, and the supplies of food and water have been severe.

3.   President Biden has even called climate change "an existential threat."

4.   196 countries entered the 2015 Paris Climate Accords and adopted the recommendations of the Intergovernmental Panel on Climate Change ("IPCC") to reach net zero emissions by 2050.

## II.   VOLUNTARY ENVIRONEMNTAL INITIATIVES

5.   Despite lofty government goals to address climate change, such attempts have repeatedly failed.

6.     In this void, large companies have adopted social responsibility codes to show the public they are committed to protecting the environment.

7.     These voluntary environmental initiatives go beyond legal requirements.

8.     The Director of President Biden's National Economic Council stated that transitioning from fossil fuels "will only happen if the American private sector, [] [is] an inextricable part of that process."

9.     According to a study by the Yale Program on Climate Change Communication, "millions of Americans are willing to 'vote with their dollars' to reward companies taking climate action and punish companies blocking action."

10.    80% of the public consider it very important or a top priority for companies to take responsibility for climate action.

11.    A survey by Oliver Wyman concluded that most consumers believe that companies should make commitments to reduce their carbon footprints and become net-zero emitters, which would affect where they buy goods and services.

12.    More than two-thirds of travelers want to make greater efforts at traveling sustainably.

13.    Over half of travelers are influenced by recent news about climate change to make more sustainable travel choices.

## III.   UNITED'S VOLUNTARILY ENVIRONMENTAL INITIATIVES

14.    United Airlines Inc. ("Defendant" or "United") tells consumers it will be

"100% green" and "Carbon neutral by 2050."[1]



15.   United highlights its environmental initiatives to obtain positive media publicity.

16.   One example is its claim to "be the first in aviation history to fly a passenger flight using 100% Sustainable Aviation Fuel (SAF)."



---

[1] United's Biggest Ad Push in a Decade Centers Its Climate Goals. Is It Enough to Combat Flight Guilt? Laura Paddison Wed 29 Dec 2021, United Airlines promises sustainable flying – but experts aren't convinced, The Guardian.

17. This announcement was designed to, and did, garner media attention which focused on its environmental initiatives.

18. United's environmental initiatives are based in part on its Eco-Skies program, promoted on the exterior of its planes, and elsewhere, with such pictures used in promotional, advertising and/or media coverage.



19. "Eco-skies" is a "General environmental benefit claim" which misrepresents, directly and by implication, the environmental impact of flying. 16 C.F.R. § 260.4(a).

20. The "Eco-Skies" claim disseminated to the public is not qualified and results in deception about the nature of the environmental benefits this program can achieve. 16 C.F.R. § 260.4(c).

21. If the aviation sector were a nation, it would be among the top 10 $CO_2$ emitters, responsible for 8% of global emissions.

22. Beyond carbon dioxide, aviation emits soot, water vapor, sulfur, and nitrous oxides, which have substantial negative impacts on the upper atmosphere.

23.   The result is contrails three times worse than the impact of CO2 alone, according to the European Union Aviation Safety Agency ("EASA").

## IV.  SUSTAINABLE BIOFUELS

24.   "Sustainable aviation biofuel" is promoted by United in numerous pictures online, marketing, advertising, in press releases and stories about its environmental commitments.



25.   United claims it is "Now flying using sustainable aviation fuel (SAF)!"



A. Describing Fuel from Biosources as "Sustainable" is Misleading

26.   United's description of alternative aviation fuels from biomaterials as "sustainable" is misleading because this conveys general environmental benefits this fuel lacks. 16 C.F.R. § 260.4(a).

27.   In a climate context, consumers understand "sustainable" to mean the absence of GHG emissions, or net-zero GHG emissions.

28.   This is consistent with the FTC's position about how such environmental claims "may convey that the item or service has no negative environmental impact." 16 C.F.R. § 260.4(b).

29.   Though biofuels may result in lower CO2 emissions than fossil fuels, their production and use results in CO2 and non-CO2 emissions.

30.   The continued emission of GHG is not sustainable because their effects on climate change are cumulative.

31.   Non-CO2 emissions of aviation are significant, and their warming impact is up to three times that of CO2.

32.   United's representations about its use of biofuels does not contain "clear and prominent qualifying language that limits the claim to a specific benefit or benefits." 16 C.F.R. § 260.4(c).

33.   By using the term "sustainable" to describe fuels derived from biological sources, it conveys it is "more environmentally beneficial overall because of the particular touted benefit(s)," since it is not from traditional fossil fuels. 16 C.F.R. §

260.4(c).

34.   However, this does not consider the trade-offs from using biofuels compared to fossil fuels.

35.   According to the International Air Transport Association ("IATA"), "there are emissions produced during the production of SAF, from the equipment needed to grow the crop, transport the raw goods, refine the fuel and so on."

36.   Growing crops to produce fuel results in land clearing, deforestation, agricultural pollution and competes with food production.

37.   These activities require significant energy usage and cause direct environmental harm.

B.   Amount of "Sustainable Aviation Fuel" is Minimal

38.   United's claims about biofuel are misleading because they are unqualified, and almost all the energy it uses comes from non-renewable fossil fuels. 16 C.F.R. § 260.15(a).

39.   According to the IATA, biofuel accounts for less than 0.1% of aviation fuels used.

40.   United's emphasis on biofuels is misleading because out of the four billion gallons of fuel it uses every year, only one million gallons comes from biofuels.  16 C.F.R. § 260.15(c).

41.   By promoting biofuels, potential fliers will believe most, or at least a

non-de minimis amount, of United's fuel is from "sustainable" sources.

## V.   CONCLUSION

42.   As a result of the false and misleading representations and omissions about its environmental initiatives, flights on United cost more than on other airlines, higher than similar airline flights, represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

## JURISDICTION

43.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

44.   The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

45.   Plaintiff is a citizen of Maryland.

46.   Defendant is a Delaware corporation with a principal place of business in Illinois.

47.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

48.   The Court has jurisdiction over Defendant because it transacts business within Maryland through its operations at Baltimore-Washington International Thurgood Marshall Airport ("BWI") and/or codesharing arrangements with airlines operating in Maryland.

49.   A codeshare flight is an agreement between airlines to sell seats on each other's flights.

50.   Only one carrier operates the flight, but the other airlines marketing the flight can add their own flight numbers for marketing purposes.

51.   Defendant transacts business in Maryland through its operations at BWI and/or codesharing arrangements with airlines operating in Maryland.

52.   Defendant has committed tortious acts within this State through the dissemination of its marketing and advertising materials described here in this State, which is misleading to consumers in this State.

53.   Defendant has committed tortious acts outside this State by its dissemination of its marketing and advertising materials described here in a manner which causes injury to consumers within this State by misleading them as to its environmental efforts, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to promote its environmental practices to consumers in this State, and/or derives substantial revenue from flights it operates in this State directly and/or with any codeshare partners in this State.

54.   Defendant has committed tortious acts outside this State by dissemination of its marketing and advertising materials described here which causes injury to consumers within this State by misleading them as to its environmental efforts with respect to climate change, by regularly doing or soliciting business, or

engaging in other persistent courses of conduct to promote its environmental practices to consumers in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

55.   Venue is in this District with assignment to the Southern Division because a substantial part of the events or omissions giving rise to these claims occurred in Prince George's County, which is where Plaintiff's causes of action accrued.

56.   Venue is based on Plaintiff's residence in Prince George's County, which is where his causes of action accrued, including his purchase of United flights either operated by United or a codeshare partner, based in part on its representations and omissions about its environmental efforts, and awareness those efforts were false and misleading.

57.   Plaintiff purchased, paid money towards or for, airline flights operated by United and/or its codeshare partners who sold United flights in reliance on the environmental claims identified here in Prince George's County.

58.   Plaintiff first became aware United's environmental claims were false and/or misleading in Prince George's County.

59.   Plaintiff resides in Prince George's County.

## PARTIES

60.   Plaintiff Alexander Zajac is a citizen of Prince George's County, Maryland.

61.   Defendant United Airlines Inc. is a Delaware corporation.

62.   Defendant United Airlines Inc. has a principal place of business in Illinois.

63.   Defendant is one of the largest airlines in the world.

64.   Plaintiff is concerned about effects of climate change.

65.   Plaintiff tries to be aware of environmental efforts by companies to reduce greenhouse gas emissions and be responsive to the threat of climate change.

66.   Plaintiff realizes that flying requires emission of carbon dioxide and chose United in part because of its environmental commitments and actions.

67.   Plaintiff is like most citizens who value the environment and wants to make choices which result in limiting climate change and patronize companies which are responsible and transparent about their commitment and efforts to the environment.

68.   Plaintiff chose between United and other airlines which did not tout their environmental attributes or did not do so to the extent of United.

69.   Plaintiff was aware of and relied on United's commitments to be "100% Green," awareness of its Eco-Skies program, and its emphasis on energy sources

which were not fossil fuels and/or its other environmental claims.

70.   Plaintiff did not expect that these claims were false and misleading because he was unaware of the extent that flying cannot be made ecologically friendly, not be 100% green, and how usage of SAF was de minimis relative to traditional fossil fuels, notwithstanding that such fuel sources are responsible for GHG emissions and other detrimental climate effects.

71.   Plaintiff paid money directly to United or its codeshare partners via purchase of flights, whether operated by United or its codeshare partners, between October 2020 and October 2023.

72.   Plaintiff paid more to fly on United than he otherwise would have had he known its representations and omissions about its environmental efforts were false and misleading.

## CLASS ALLEGATIONS

73.   Plaintiff seeks to represent the following class:

> All persons in the State of Maryland who purchased flights on United or via United through its codeshare partners in reliance on its environmental claims during the statutes of limitations for each cause of action alleged.

74.   Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

75.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

76.   Plaintiff is an adequate representative because his interests do not conflict with other members.

77.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

78.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

79.   The class is sufficiently numerous and likely includes thousands of people who have purchased airline tickets on United or codeshare partners within Maryland.

80.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Maryland Consumer Protection Act ("MCPA"),
Commercial Law, Md. Code, § 13-101, *et seq.*

81.   Plaintiff incorporates by reference paragraphs 1-42.

82.   The purpose of the MCPA is to protect consumers against unfair and deceptive practices.

83.   The MCPA was modeled on the Federal Trade Commission ("FTC") Act.

84.   The FTC enacted Guides and Trade Practice Rules for environmental marketing claims.

85.   United's representations and omissions are contrary to FTC rules for environmental marketing claims.

86.   Defendant represented and omitted that its environmental initiatives had characteristics it did not have.

87.   Defendant failed to state material facts about its environmental initiatives and the failure to do so deceived or tends to deceive consumers.

88.   United's representations and omissions are deceptive and misleading to consumers because they overstate its environmental efforts, among other things.

89.   Plaintiff believed that flying on United would be better for the environment based on its claims and promotions of its Eco-Skies program, commitments to be "100% Green," its emphasis on energy sources which were not fossil fuels and/or its other environmental claims.

90.   Plaintiff did not expect that these claims were false and misleading because he was unaware of the extent that flying cannot be made ecologically friendly, not be 100% green, and how its SAF usage was de minimis relative to traditional fossil fuels, notwithstanding that such fuel sources are responsible for

GHG emissions and other detrimental climate effects.

91. Plaintiff paid money for or towards air travel on United, and he would not have or paid as much as he did, if he knew that its environmental claims were false and misleading.

92. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading environmental claims United made, a deceptive practice under this State's consumer protection laws, by paying more for flights with United that were operated by United and/or its codeshare partners, than he otherwise would have.

93. Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for travel via United, either directly or with its codeshare partners, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

94. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### Fraud

95. Plaintiff incorporates by reference paragraphs 1-42.

96. Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

97. WHO: Defendant, United, made material misrepresentations and/or omissions of fact in its advertising, promotion and/or marketing of its environmental initiatives.

98. WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing flying can be "100% Green," that "Eco-Skies" meant flying can be ecologically friendly, it relied significantly on energy sources which were not fossil fuels and/or its other environmental claims.

99. Plaintiff did not expect that these claims were false and misleading because he was unaware of the extent that flying cannot be made ecologically friendly, not be 100% green, and how its SAF usage was de minimis relative to traditional fossil fuels, notwithstanding that such fuel sources are responsible for GHG emissions and other detrimental climate effects.

100. Defendant knew or should have known this information was material to all or most reasonable consumers and impacts their purchasing decisions.

101. Upon information and belief, Defendant conducted or relied on research about consumer purchasing habits.

102. Defendant knew or should have known that almost all consumers want companies to be responsible stewards of the planet, to minimize their contributions to climate change and be transparent about their efforts.

103. Defendant highlighted these attributes in its media and marketing

materials it disseminated to the public including purchasers of airline tickets, presented to Plaintiff and consumers.

104. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of these falsities and deception, through statements and omissions.

105. Yet, Defendant has represented and/or continues to represent that flying with United can be "100% Green," that "Eco-Skies" meant flying can be ecologically friendly, it relied significantly on energy sources which were not fossil fuels and/or its other environmental claims.

106. Plaintiff did not expect that these claims were false and misleading because he was unaware of the extent that flying cannot be made ecologically friendly, not be 100% green, and how its SAF usage was de minimis relative to traditional fossil fuels, notwithstanding that such fuel sources are responsible for GHG emissions and other detrimental climate effects.

107. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and/or through the filing of this Complaint.

108. WHERE: Defendant's material misrepresentations and omissions identified here were made in its advertising, marketing, promotional videos, signage, press releases and events intended to garner positive coverage of its environmental

efforts, online and elsewhere, which all or most consumers would inevitably see and take notice of.

109. Plaintiff was aware of and relied on United's commitments to be "100% Green," awareness of its Eco-Skies program, its emphasis on energy sources which were not fossil fuels and/or its other environmental claims.

110. HOW: Defendant made written and/or visual misrepresentations and omissions in its advertising and marketing, through its website, digital media, social, print media, and events designed to garner media attention and obtain positive publicity for its environmental efforts which were disseminated to the public, including purchasers of airline tickets including Plaintiff and consumers.

111. And as discussed in detail throughout this Complaint, Plaintiff and class members were aware of, read and/or relied on Defendant's representations and omissions before paying money for or towards flights on United.

112. WHY: Defendant misrepresented its environmental commitments and ability to reduce greenhouse gas emissions for the express purpose of inducing Plaintiff and class members to buy flights on United at a substantial price premium, in part based on consumer demand for buying goods and services of companies which act responsibly towards the environment and are doing their part to combat climate change.

113. As such, Defendant profited by selling airline tickets to consumers

throughout this State.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 19, 2023

Respectfully submitted,

/s/  Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates, P.C.

*Counsel for Plaintiff*