# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| ALEXANDER ZAJAC, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 8:23-cv-03145 |
| v. | Hon. Paula Xinis |
| UNITED AIRLINES, INC., | |
| Defendant. | |

## UNITED AIRLINES, INC.'S MOTION TO DISMISS
## PLAINTIFF'S CLASS ACTION COMPLAINT

Laura Basem Jacobs, Bar # 03142
Thomas F. Stowe, Bar # 30556
BUDOW AND NOBLE, P.C.
12300 Twinbrook Pkwy., Suite 540
Rockville, MD 20852
Tel.     301-654-0896
Fax     301-907-9591
ljacobs@budownoble.com
tstowe@budownoble.com

Sondra A. Hemeryck (*pro hac vice*)
Eli J. Litoff (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
Tel.     312-471-8700
Fax     312-471-8701
shemeryck@rshc-law.com
elitoff@rshc-law.com

*Attorneys for Defendant United Airlines, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................. 1

FACTUAL ALLEGATIONS ............................................................................... 2

LEGAL STANDARD.......................................................................................... 3

ARGUMENT ....................................................................................................... 4

I.     The ADA Preempts Plaintiff's Claims. ...................................................... 4

      A.    The ADA Preempts State Law Fraud and Consumer Protection Claims Related to Airlines' Prices, Routes, and Services. .................................................... 4

      B.    Plaintiffs' Claims Relate to United's Prices and Services. ..................................... 7

II.    Plaintiff Fails to State a Claim Against United.................................................. 11

      A.    Plaintiff Has Failed to Adequately Plead Any Elements of His Claims. .............. 12

            1.    United's Statement Regarding Its 2050 Goals......................................... 14

            2.    United's Alleged Eco-Skies Program. ...................................................... 17

            3.    United's Use of Sustainable Aviation Fuel.............................................. 18

      B.    Plaintiff Fails to Allege a Cognizable Injury Under The MCPA.......................... 21

CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

Page

**CASES**

*Air Evac EMS, Inc. v. Cheatham*,
910 F.3d 751 (4th Cir. 2018) ....................................................................................6, 8, 10

*Alaska Airlines, Inc. v. Carey*,
No. C07-5711 RBL, 2008 WL 2725796 (W.D. Wash. July 11, 2008).....................................7

*All Med. Pers., Inc. v. Ameritox, LLC*,
No. CV CCB-18-1527, 2018 WL 5810866 (D. Md. Nov. 6, 2018) .......................................15

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995).............................................................................................5, 6, 9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................3, 12

*Bank of Am., N.A. v. Jill P. Mitchell Living Trust*,
822 F. Supp. 2d 505 (D. Md. 2011) ..................................................................................13

*Barber v. Nestlé USA, Inc.*,
154 F. Supp. 3d 954 (C.D. Cal. 2015) ...............................................................................17

*Barr v. Flagstar Bank, FSB*,
303 F. Supp. 3d 400 (D. Md. 2018) ..................................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................3, 12

*Botts v. Johns Hopkins Univ.*,
No. CV ELH-20-1335, 2021 WL 1561520 (D. Md. Apr. 21, 2021) ...............................13, 20

*Bower v. Egyptair Airlines Co.*,
731 F.3d 85 (1st Cir. 2013)...........................................................................................9, 10

*Branche v. Airtran Airways, Inc.*,
342 F.3d 1248 (11th Cir. 2003) ........................................................................................10

*Bryant v. Koppers, Inc.*,
627 F. Supp. 3d 466 (D. Md. 2022) ..................................................................................11

*Chambers v. King Buick GMC, LLC*,
43 F. Supp. 3d 575 (D. Md. 2014) ..............................................................................21, 22

*Curtis v. 7-Eleven, Inc.*,
 No. 21-CV-6079, 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ............................................18

*Earth Island Institute v. The Coca-Cola Company*,
 No. 2021 CA 001846 B, 2022 WL 18492133 (D.C. Super. Nov. 10, 2022)..............16, 17, 21

*First Union Nat. Bank v. Steele Software Sys. Corp.*,
 838 A.2d 404 (Md. Ct. Spec. App. 2003) ..............................................................................15

*Flaster/Greenberg P.C. v. Brendan Airways, LLC*,
 No. CIV. A. 08-4333, 2009 WL 1652156 (D.N.J. June 10, 2009) ........................................10

*Gordon v. United Cont'l Holding, Inc.*,
 73 F. Supp. 3d 472 (D.N.J. 2014) ............................................................................................7

*Haley v. Corcoran*,
 659 F. Supp. 2d 714 (D. Md. 2009) .......................................................................................13

*People ex rel. Harris v. Delta Air Lines, Inc.*,
 247 Cal. App. 4th 884 (2016) ..................................................................................................7

*Jewell v. Maryland Real Est. Comm'n*,
 No. 2603, 2021 WL 1235836 (Md. Ct. Spec. App. Apr. 2, 2021)....................................15, 16

*Johnson v. Wheeler*,
 492 F. Supp. 2d 492 (D. Md. 2007) .....................................................................................4, 13

*Jones v. Koons Auto., Inc.*,
 752 F. Supp. 2d 670 (D. Md. 2010) ........................................................................................21

*Jones v. Specialized Loan Servicing, LLC*,
 No. CV RDB-22-1987, 2023 WL 1442435 (D. Md. Feb. 1, 2023) ........................4, 13, 21, 22

*Layani v. Ouazana*,
 No. 20-420, 2021 WL 805405 (D. Md. Mar. 3, 2021) ..............................................................3

*Marcus v. Centers for Disease Control & Prevention*,
 No. 2:22-cv-02383-SSS-ASx, 2023 WL 3044614 (C.D. Cal. Feb. 21, 2023)..........................6

*Morales v. Trans World Airlines, Inc.*,
 504 U.S. 374 (1992).........................................................................................................5, 6, 9

*Musson Theatrical, Inc. v. Federal Express Corp.*,
 89 F.3d 1244 (6th Cir. 1996) ...................................................................................................6

*Myers v. Starbucks Corp.*,
 2020 WL 13302437 (C.D. Cal. July 29, 2020) .......................................................................17

*Nirala v. Adhali*,
No. 8:18-CV-03330-PX, 2019 WL 3457661 (D. Md. July 31, 2019) .................................... 18

*Northwest, Inc. v. Ginsberg*,
572 U.S. 273 (2014) ........................................................................................................... 4

*In re Nw. Airs. Priv. Litig.*,
2004 WL 1278459 (D. Minn. June 6, 2004) ......................................................................... 7

*O'Toole v. Northrop Grumman Corp.*,
499 F.3d 1218 (10th Cir. 2007) ........................................................................................ 19

*Pica v. Delta Air Lines, Inc.*,
No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) ......................... 6

*Rojas v. Delta Airlines*, Inc.,
425 F. Supp. 3d 524 (D. Md. 2019) ..................................................................................... 6

*Ruiz v. Darigold, Inc.*,
2014 WL 5599989 (W.D. Wash. Nov. 3, 2014) ................................................................ 17

*Sammons v. McCarthy*,
606 F. Supp. 3d 165 (D. Md. 2022) ................................................................................... 19

*Shrem v. Sw. Airlines Co.*,
No. 15-cv-04567-HSG, 2016 WL 4170462 (N.D. Cal. Aug. 8, 2016) .................................. 8

*Smith v. Comair, Inc.*,
134 F.3d 254 (4th Cir. 1998) ........................................................................................... 11

*Spaulding v. Wells Fargo Bank, N.A.*,
714 F.3d 769 (4th Cir. 2013) ............................................................................................. 3

*Spencer v. Delta Air Lines, Inc.*,
2010 WL 11684812 (S.D. Cal. Oct. 26, 2010) ..................................................................... 7

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
219 F.3d 605 (7th Cir. 2000) ............................................................................................. 6

*Vail v. Pan Am Corp.*,
616 A.2d 523 (N.J. Super. Ct. App. Div. 1992) ............................................................... 7, 8

*Weber v. USAirways, Inc.*,
11 F. App'x 56 (4th Cir. 2001) .......................................................................................... 6

**STATUTES**

49 U.S.C. § 40101 ............................................................................................................. 4

49 U.S.C. § 41713(b)(1) ...................................................................................................4

**RULES**

Fed. R. Civ. P. 8(a) ...........................................................................................................2

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)......................................................................................................3

## INTRODUCTION

Plaintiff Alexander Zajac is a Maryland resident who claims to have purchased flights from United or its codeshare partners at some point between October 2020 and October 2023. He alleges that at unspecified times during that three-year period, United made false and misleading representations concerning its sustainability efforts and environmental initiatives. Plaintiff alleges that he saw these purported misrepresentations at unidentified times via unidentified advertising mediums, and that the statements caused him to purchase tickets to travel on unidentified United flights and pay an unidentified amount of money for those flights (but more than he otherwise would have paid absent the misrepresentations). Based on this conduct, Plaintiff asserts claims against United for violation of the Maryland Consumer Protection Act ("MCPA") and fraud.

This case should be dismissed in its entirety and with prejudice because Plaintiff's claims are preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 40101, *et seq.* (the "ADA"). The ADA was enacted in 1978 to deregulate the airline industry by removing federal controls over such areas as airlines' rates, routes, or services. To prevent states from undoing what Congress had done, the ADA included a broad preemption provision that preempts state-law claims related to an airline's rates, routes, or services. The United States Supreme Court, on more than one occasion, has held that the ADA preempts fraud and state-law consumer protection claims arising out of the manner in which airlines market their services—exactly the claims Plaintiff attempts to bring here. As a result, Plaintiff's claims should be dismissed, and because no amendment could cure this fatal defect, they should be dismissed with prejudice.

In addition, Plaintiff fails to state a viable cause of action against United even apart from ADA preemption. Plaintiff's claims for violation of the MCPA (Count I) and fraud (Count II) are both subject to Rule 9(b)'s heightened pleading standard, but Plaintiff provides no factual support

for his conclusory allegations. Plaintiff does not allege where and when he supposedly viewed the advertisements or provide any context outside of cherry-picked "screenshot" images inserted into his Complaint. He does not even identify the flight or flights that he was supposedly deceived into purchasing. He merely references a three-year period during which he "paid money" at some point to United or its codeshare partners. In short, Plaintiff alleges no specifics regarding what representations he supposedly saw, when he saw them, how he saw them, or how, exactly, they misled him. That is not enough under Rule 8(a), and it is certainly not enough under the heightened standard of Rule 9(b).

Finally, Plaintiff's MCPA claim independently fails because the harm alleged—that Plaintiff paid a "price premium" based on deception—is not a cognizable injury under the statute. This lawsuit should be dismissed in its entirety.

## FACTUAL ALLEGATIONS

Plaintiff is a resident and citizen of Maryland. Class Action Complaint, ECF No. 1 ("Compl."), ¶¶59–60. Plaintiff claims that, at some point between October 2020 and October 2023, he purchased flights from either United or its codeshare partners. *Id*. ¶¶ 57, 71. He does not specify what flights he purchased, from whom, when he purchased them, or how much he paid for them. *See id*. He says only that he supposedly paid more than he otherwise would have for these unidentified flights in reliance on United's "representations and omissions about its environmental efforts." *See* ¶ 72. According to Plaintiff, these purported misrepresentations related to (1) United's goal to be "100% green" and "Carbon neutral by 2050"; (2) United's "Eco-Skies program"; and (3) United's use of "sustainable aviation fuel (SAF)." *See id*. ¶¶ 14–41. Plaintiff does not allege in what form he saw these representations, when he saw them, or how they misled him into purchasing flights he otherwise would not have. *See id*. Instead, Plaintiff merely says that United's

environmental initiatives are "false and misleading" because "flying cannot be made ecologically friendly, [can]not be 100% green," United's "usage of SAF was de minimis relative to traditional fossil fuels," and SAF is "responsible for GHG emissions and other detrimental climate effects." *Id*. ¶ 70.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, a court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Under that standard, a complaint must be dismissed unless its well-pleaded factual allegations establish "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Determining whether the allegations in a complaint state a "plausible" claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

In addition, because Plaintiff's claims sound in fraud, they are subject to the heightened pleading standard of Rule 9(b). *Layani v. Ouazana*, No. 20-420, 2021 WL 805405 (D. Md. Mar. 3, 2021) ("Claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened standard of Rule 9(b)."); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that MCPA claims sounding in fraud are subject to the

heightened pleading standards of Federal Rule of Civil Procedure 9(b)). Rule 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Jones v. Specialized Loan Servicing, LLC*, No. CV RDB-22-1987, 2023 WL 1442435, at *3 (D. Md. Feb. 1, 2023) (citing *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007)).

## ARGUMENT

### I.   The ADA Preempts Plaintiff's Claims.

The ADA preempts state law claims—including fraud and consumer protection claims like those asserted by Plaintiff—so long as the claims relate to an airline's prices, routes, or services. In this case, Plaintiff's claims relate to both United's prices and services. Accordingly, Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

#### A.   The ADA Preempts State Law Fraud and Consumer Protection Claims Related to Airlines' Prices, Routes, and Services.

In 1978, Congress enacted the ADA to promote "efficiency, innovation, and low prices" in the airline industry through "maximum reliance on competitive market forces and on actual and potential competition" rather than regulation. 49 U.S.C. § 40101(a)(6), (a)(12). To "prevent the states from undoing what the [ADA] was meant to accomplish," Congress included a broad preemption provision. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283 (2014). Under the ADA's preemption provision, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The ADA thus preempts state laws that are "related to"—*i.e.*, have "a connection with, or reference to"—an airline's prices, routes or services. *Ginsberg*, 572 U.S. at 280–84. ADA

preemption applies with equal force to suits brought under state statutes, state regulations, and state common law. *Id.* at 281–84.

The Supreme Court first interpreted the ADA's preemption provision in *Morales v. Trans World Airlines*, Inc., 504 U.S. 374, 383–84 (1992), a case that is particularly relevant to Plaintiff's claims. In *Morales*, the Court addressed states' regulatory efforts to curb "allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes." *Id.* at 378. The Court held that the ADA's preemption provision applied to state guidelines aimed at allegedly deceptive fare advertisements, holding that the regulations "obviously" relate to airlines' fares, and were thus preempted. *Id.* at 387; *see also id.* at 384 (recognizing that the phrase "relating to" in the ADA's preemption provision is "deliberately expansive" and "conspicuous for its breadth"). As the Court reasoned, "the obligations imposed by the guidelines would have a significant impact upon the airlines' ability to market their product," in direct contravention to the ADA's purpose. *Id.* at 390.

The Supreme Court again interpreted the ADA's preemption provision in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), rendering another decision directly applicable to Plaintiff's claims here. In *Wolens*, the plaintiff brought a putative class action under the Illinois Consumer Fraud and Deceptive Practices Act, claiming an airline deceptively marketed its frequent flyer program. *Id.* at 225. The Supreme Court held that the claims were preempted because a plaintiff cannot use state consumer protection laws to "guide and police the marketing practices of the airlines." *Id*. at 228. The Court held that, in line with the pro-competitive purpose of the ADA, "the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services" was up to the airlines—not the states. *Id.* The Court emphasized that its interpretation of the ADA did not give airlines free reign to deceive consumers, as the U.S.

Department of Transportation "retains authority to investigate unfair and deceptive practices" by airlines and "may order an airline to cease and desist from such practices." *Id*. at 228 n.4.

Following *Morales* and *Wolens*, it is clear that a plaintiff cannot bring a fraud or consumer protection claim related to an airline's marketing of its services. In line with this Supreme Court precedent, the Fourth Circuit and its district courts have consistently found state-law fraud and consumer protection claims preempted, so long as they relate to an airline's prices, routes, or services. *See, e.g.*, *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 762 (4th Cir. 2018) (citing *Morales* and *Wolens* for the principle that the ADA "displaces a state's generally applicable consumer protection laws related to advertising" and "statutory causes of action related to fraudulent and deceptive practices"); *Weber v. USAirways, Inc.*, 11 F. App'x 56, 57–58 (4th Cir. 2001) (fraud claim based on alleged failure to disclose certain ticket restrictions was preempted by the ADA); *Rojas v. Delta Airlines*, Inc., 425 F. Supp. 3d 524, 545 (D. Md. 2019) ("Plaintiffs' claims of fraud and fraudulent concealment or omission … are based on state-imposed obligations, so they are preempted by the ADA and must be dismissed with prejudice.").

State and federal courts across the country are in accord with the Fourth Circuit, consistently holding fraud and consumer protection claims related to prices and services preempted by the ADA. *See, e.g.*, *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir. 1996) ("State law fraud claims are preempted … because Congress intended [the Department of Transportation] to be the sole legal control on possible advertising fraud by air carriers."); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 608–11 (7th Cir. 2000) (noting that "*Wolens* held general consumer-fraud law preempted"); *Marcus v. Centers for Disease Control & Prevention*, No. 2:22-cv-02383-SSS-ASx, 2023 WL 3044614, at *11 (C.D. Cal. Feb. 21, 2023) ("[C]laim[s] regarding fraudulent misrepresentation are preempted by the ADA"); *Pica v. Delta Air Lines, Inc.*,

No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *4–*9 (C.D. Cal. Sept. 18, 2018) (claims brought under California consumer protection statute preempted); *Spencer v. Delta Air Lines, Inc.*, 2010 WL 11684812, at *3 (S.D. Cal. Oct. 26, 2010) (same); *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014) (holding claims brought under New Jersey consumer protection statutes preempted due to "[t]he Supreme Court's broad interpretation of the ADA preemption clause to eschew state consumer protection statutes in general"); *Alaska Airlines, Inc. v. Carey*, No. C07-5711 RBL, 2008 WL 2725796, at *4 (W.D. Wash. July 11, 2008), *aff'd*, 395 F. App'x 476 (9th Cir. 2010) ("The ADA preempts any attempt to use state substantive law as a means to guide and police the marketing practices of the airlines…"); *In re Nw. Airs. Priv. Litig.*, 2004 WL 1278459, at *4 (D. Minn. June 6, 2004) (ADA preempted claims under the Minnesota Deceptive Trade Practices Act); *People ex rel. Harris v. Delta Air Lines, Inc*., 247 Cal. App. 4th 884, 901 (2016) (California consumer protection claims preempted); *Vail v. Pan Am Corp.*, 616 A.2d 523, 526 (N.J. Super. Ct. App. Div. 1992) (finding consumers' state law fraud claims preempted).

Accordingly, Plaintiffs claims are preempted and must be dismissed so long as they relate to United's prices, routes, or services. As explained below, they clearly do.

**B.    Plaintiffs' Claims Relate to United's Prices and Services.**

Plaintiff's claims undoubtedly relate to both United's prices and services. As an initial matter, Plaintiff alleges that he "paid money" to United by purchasing flights, and that he either "would not have" paid that money, or would not have "paid as much as he did, if he knew that [United's] environmental claims were false and misleading." *See* Compl. ¶ 91; *id.* ¶ 42 ("As a result of the false and misleading representations and omissions about its environmental initiatives, flights on United cost more than on other airlines, higher than similar airline flights, represented in a non-misleading way, and higher than they would be sold for absent the misleading

representations and omissions."); ¶¶ 71–72 (alleging he "paid more to fly on United than he otherwise would have" had he known about United's misrepresentations); *id.* ¶ 93 (alleging Plaintiff "and consumers paid more than they otherwise would have paid for travel via United … relying on Defendant's representations and omissions"); ¶ 112 (alleged misrepresentations made to induce consumers "to buy flights on United at a substantial price premium"). These allegations make clear that Plaintiff's claims relate to United's prices. *See Air Evac EMS, Inc.*, 910 F.3d at 768 (observing that if state laws "directly targeted at payments for [airline] services … are not 'related to price,' it is unclear what meaning the phrase would have left"); *see also Shrem v. Sw. Airlines Co.*, No. 15-cv-04567-HSG, 2016 WL 4170462, at *3 (N.D. Cal. Aug. 8, 2016) (finding plaintiff's claims related to "money paid for a ticket" preempted because they related to the airline's rates and services); *Vail*, 616 A.2d at 526 (holding that claims predicated on premium paid due to purportedly deceptive advertising "quite obviously" related to airline's fares and services).

The court's decision in *Vail*, in particular, is instructive, as it addressed a "price premium" theory almost identical to that alleged in Plaintiff's Complaint. In *Vail*, the plaintiffs alleged that Pan Am World Airways deceptively advertised an enhanced security program and charged higher prices to defray the costs of that program. 616 A.2d at 295. The court held that these consumer fraud and deceptive practices claims "obviously" related to the rates charged by the airline. *Id.* at 299. The court found that any other conclusion would run afoul of the ADA's purpose, as it would:

> permit state courts to determine whether an airline's advertising was false and deceptive, and whether services advertised were in fact provided. If the airline's conduct were fraudulent or deceptive, state courts could fashion remedies, applying state law, proscribing certain advertising and compelling the airline to repay customers surcharges and other 'rates' charged to air passengers.

*Id.* As the court correctly recognized, "[t]he result would be multiple and potentially conflicting standards controlling airline advertising, services and rates." *Id.* at 299–300. This would be directly contrary to the purpose of the ADA's preemption provision, which the Supreme Court has

recognized was put in place to prevent states from enacting a "patchwork" of confusing and potentially inconsistent obligations on airlines. *See Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 97 (1st Cir. 2013) ("[I]f plaintiffs prevailed, the result would be exactly what [the Supreme Court] warn[ed] against: a 'patchwork' of state regulations that effectively frustrate Congress's purpose in deregulating the airlines.") (affirming dismissal of claims) (citing *Morales*, 504 U.S. at 378–79).

Plaintiff's claims also plainly relate to United's services. Indeed, Plaintiff challenges the manner in which United markets and advertises its principal service—"the furnishing of air transportation." *Wolens*, 513 at 228. He alleges that certain of United's statements are misleading because they imply that United's "***service*** has no negative environmental impact." Compl. ¶ 28 (emphasis added). He asserts that he chose to purchase air transportation services on United, as opposed to purchasing that same service from another airline, because United's advertisements caused him to believe that ***the service*** would be provided in an environmentally friendly manner. *See, e.g.*, *id.* ¶ 66 (Plaintiff "chose United in part because of its environmental commitments and actions"); *id.* ¶ 68 ("Plaintiff chose between United and other airlines which did not tout their environmental attributes or did not do so to the extent of United."). And he alleges that other consumers similarly make their choice of which airline to fly based upon the airlines' commitments to providing air transportation services in a sustainable manner. *See, e.g.*, *id.* ¶ 11 (alleging a survey concluded "that most consumers believe that companies should make commitments to reduce their carbon footprints and become net-zero emitters, which would affect where they buy goods and ***services***.") (emphasis added); ¶ 13 ("Over half of travelers are influenced by recent news about climate change to make more sustainable travel choices.").

9

These allegations also make clear that allowing Plaintiff's claims to proceed would run afoul of the ADA's pro-competitive purpose. The ADA was implemented to "promote open market competition," and was specifically "designed to promote maximum reliance on competitive market forces" in the airline industry. *Air Evac EMS, Inc.*, 910 F.3d at 768 (quoting *Wolens*, 513 U.S. at 230). According to Plaintiff, airlines' marketing of their services, including their efforts to provide those services in a more sustainable manner, is an important way in which airlines compete for customers, who allegedly make their purchasing decisions based in part on these environmental representations. *See, e.g.*, Compl. ¶¶ 11, 13, 66, 68. Subjecting airlines to a "patchwork" of state laws and regulations regarding these marketing efforts, *Bower*, 731 F.3d at 97, would undoubtedly impact the manner in which airlines compete with one another. *See Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1258–59 (11th Cir. 2003) (holding that to serve the ADA's purpose, "relating to" services must be interpreted broadly to include not only state laws that "directly regulate[] such services," but also those that have "a significant economic impact on them"). It is for this exact reason that courts—including the United States Supreme Court—refuse to enforce state-imposed obligations on the way airlines market to consumers. *See Wolens*, 513 U.S. 228. ("In light of the full text of the preemption clause, and of the ADA's purpose to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services, we conclude that [the ADA] preempts plaintiffs' claims under the Consumer Fraud Act.") (footnote omitted); *see also, e.g.*, *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, No. CIV. A. 08-4333, 2009 WL 1652156, at *6 (D.N.J. June 10, 2009) (holding consumer fraud claim preempted by ADA where it would "would impermissibly sanction regulation of the manner in which the airline advertises its services").

10

In short, Plaintiff's claims clearly relate to both United's prices and its services and are thus preempted by the ADA. The Fourth Circuit has cautioned that ADA preemption must be analyzed in light of the asserted claims' "practical effect on federal law" governing the airline industry. *See Smith v. Comair, Inc.*, 134 F.3d 254, 258 (4th Cir. 1998). The practical effect of allowing claims like Plaintiff's to proceed would be a patchwork of state laws regulating the way airlines compete for customers, directly contrary to the purpose of the ADA, as interpreted by the United States Supreme Court. Accordingly, the Complaint should be dismissed in its entirety, and because no amendment could cure this defect, the dismissal should be with prejudice.

## II.   <u>Plaintiff Fails to State a Claim Against United.</u>

Preemption aside, both of Plaintiff's claims are insufficiently pled. Plaintiff's claims—for violation of the MCPA (Count I) and common law fraud (Count II)—require him to plead similar elements. A private party bringing a claim under the MCPA must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes him actual injury. *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022) (citation omitted), *aff'd*, 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023). Similarly, to state a claim for fraud under Maryland law, the plaintiff must show: "(1) a representation made by a party was false; (2) its falsity was known to that party or the misrepresentation was made with reckless indifference to truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied upon the misrepresentation and had the right to rely upon it with full belief of its truth; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 415 (D. Md. 2018). Furthermore, because both of Plaintiff's claims sound in fraud, they are both subject to the stringent pleading requirements of Rule 9(b). *See Bryant*, 627 F. Supp. 3d at 478 ("The complaint alleges that 'the false statements, deceptive actions,

misrepresentations, omissions, and other acts described in this complaint deceived and tended to deceive Plaintiffs in violation of MCPA . . . This claim sounds in fraud, and is subject to the heightened pleading requirements of Rule 9(b).").

Plaintiff fails to satisfy even the plausibility standard of *Iqbal* and *Twombly* with respect to any elements of his claims, let alone satisfy the heightened pleading standard of Rule 9(b). Moreover, Plaintiff has failed to allege—and cannot allege—a cognizable injury under the MCPA. For these reasons as well, Plaintiff's claims should be dismissed.

### A.   Plaintiff Has Failed to Adequately Plead Any Elements of His Claims.

Plaintiff's claims are based on three allegedly false and misleading representations by United: (1) United's goal to be "100% green" and "Carbon neutral by 2050"; (2) United's "Eco-Skies program"; and (3) United's representations regarding "sustainable aviation fuel (SAF)." *See id*. ¶¶ 14–41. But the Complaint is devoid of allegations as to the time, place, or circumstances of the alleged misrepresentations. Instead, Plaintiff generally alludes to various disparate promotional materials from United without providing any facts about which of those materials *he* saw, *when* he saw them, *how* he saw them, or *how* they misled him. Plaintiff does not even identify what flight(s) he was supposedly deceived into purchasing. Without these details, Plaintiff cannot state a plausible claim to relief.

Plaintiff purports to provide the requisite "who, what, when, where" in paragraphs 97 through 112 of his complaint, but those paragraphs do not come close to offering the specificity required by Rule 9(b). For example, to satisfy the "when" requirement, Plaintiff simply alleges that the representations were made at some point during a three-year period. *Id.* ¶ 107. To satisfy the "where" requirement, Plaintiff generally asserts that the "material misrepresentations" (he does not say which ones) were made in United's "advertising, marketing, promotional videos, signage, press releases and events." *Id.* ¶ 108. He does not link any particular statement to any particular

medium, nor identify the time at which it was made, the context in which it was made, or how it induced him to purchase any particular flight or pay any particular price premium.

This is simply not enough to satisfy Rule 9(b), which requires a plaintiff to "identify *with some precision* the date, place and time of active misrepresentations or the circumstances of active concealments." *Jones v. Specialized Loan Servicing, LLC*, CV RDB-22-1987, 2023 WL 1442435, at *3 (D. Md. Feb. 1, 2023) (quoting *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007)); *see also Haley v. Corcoran,* 659 F. Supp. 2d 714, 724 (D. Md. 2009) (a fraud-based MCPA claim must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby"). Even under the most generous reading of the Complaint, all that can be gleaned from Plaintiff's allegations are that, at some point during a three-year period, he viewed some United promotional materials and purchased some unidentified flights at some unidentified price. Rule 9(b) requires more.

Moreover, the allegedly misleading "statements" in the complaint appear to consist generally of "screenshots" or "snippets" of various advertisements or marketing materials, rather than the complete statement, in context. *See, e.g.*, Compl. ¶¶ 14, 16, 18, 24–25. This selective pleading of cherry-picked portions of random statements also dooms Plaintiff's claims because it does provide the Court with the requisite context to assess whether any particular statement was indeed misleading and whether Plaintiff's purported reliance was reasonable. When assessing whether United's statements were likely to mislead a "reasonable but unsophisticated consumer … a statement cannot be viewed in a vacuum; rather, it must be viewed in the context in which it was made, along with other representations to the consumer." *Botts v. Johns Hopkins Univ.*, No. CV ELH-20-1335, 2021 WL 1561520, at *19 (D. Md. Apr. 21, 2021) (cleaned up); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 536 (D. Md. 2011) (finding that

the "willful blindness" of a consumer cannot give rise to a cause of action under the MCPA). Screenshots from unidentified advertisements on unidentified dates without any surrounding context simply cannot support a plausible claim to relief in these circumstances.

The lack of specificity also renders Plaintiff unable to sufficiently allege the element of damage/injury. Plaintiff alleges that he would not have chosen to fly on United, or that he would have paid less for his tickets, had it not been for the alleged misrepresentations. *See, e.g.*, Compl. ¶¶ 91–93, 112. But again, Plaintiff has not even alleged the specific flights he took in reliance on any particular advertisement, let alone the price (or price premium) that he paid for those flights. In other words, Plaintiff does not allege or identify: (1) what he paid for; (2) the specific price he paid; (3) the premium United allegedly charged; (3) any specific competitor's flight (or price); (4) how those flights are purportedly comparable to his flight(s); or (5) how those competitors' advertising compares to United's. As such, he fails to sufficiently allege injury to support his MCPA or fraud claims.

The deficiencies in Plaintiff's pleading are highlighted when examining each of the supposedly misleading statements at issue. Plaintiff has not alleged that any of these statements are false or misleading, that he reasonably relied upon any of them, or that he was damaged thereby.

### 1.   United's Statement Regarding Its 2050 Goals.

With respect to the first alleged misrepresentation, Plaintiff's allegation that United misrepresented its goal to be "100% green" and "Carbon neutral by 2050" is based on a single picture pasted into the Complaint. Compl. ¶ 14. The Complaint does not allege where Plaintiff viewed this advertisement, when Plaintiff viewed the advertisement, what flight he purchased in reliance upon the advertisement, or provide any context outside of the still image pasted into the Complaint. *Id.* The picture in Plaintiff's Complaint appears to be a "screenshot" captured from a video, rather than a print advertisement. But Plaintiff has not identified the video or provided any

14

context outside a this single, cherry-picked still image. United and this Court are thus forced to *guess* where and when Plaintiff saw this image, and what context was provided by the rest of the advertisement. Without any of these details, Plaintiff cannot plausibly allege that United's statements were misleading or that he reasonably relied upon them.[1]

In addition to lacking the required specificity, Plaintiff's claim with respect to United's 2050 goals suffers from another fundamental flaw: Plaintiff has not plausibly alleged—and could not plausibly allege—that United's forward-looking statement regarding its goal to be "100% green" and "Carbon neutral by 2050" is false. The statement reflects an aspirational *goal* that is still *26 years away*. Such a statement is simply not an actionable misrepresentation under Maryland law. *See, e.g.*, *Jewell v. Maryland Real Est. Comm'n*, No. 2603, 2021 WL 1235836, at *12 (Md. Ct. Spec. App. Apr. 2, 2021) ("[O]rdinarily, fraud cannot be predicated on statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises or the failure of future events to materialize as predicted.") (quotation omitted); *First Union Nat. Bank v. Steele Software Sys. Corp.*, 838 A.2d 404, 443 (Md. Ct. Spec. App. 2003) ("general statements of expectation" are not actionable as fraud). Although Maryland law does allow, in limited circumstances, a fraud claim to proceed based upon a promise of future conduct, the plaintiff must plausibly allege facts supporting an inference that the speaker made the promise "with an existing intention not to perform." *See All Med. Pers., Inc. v. Ameritox, LLC*, No. CV

---

[1] For example, one possibility is that Plaintiff generated the screenshot in paragraph 14 of the Complaint from one of United's webpages discussing its 2050 goals. *See, e.g.*, https://www.united.com/ual/en/us/fly/company/global-citizenship/environment/100-percent-green.html (last visited February 12, 2024). This webpage contains a full video (not just Plaintiff's still image) as well as various other written statements concerning what United means by "100% green" and how United plans to achieve its goals. While the Court need not consider United's webpage in ruling on this motion to dismiss (again, it is not even clear from the pleading that this webpage is the source of the image in paragraph 14), the existence of this context highlights the deficiencies in Plaintiff's pleading.

CCB-18-1527, 2018 WL 5810866, at *2 (D. Md. Nov. 6, 2018). In this case, United's statement is not a promise to perform—i.e. that United actually will be 100% green or carbon neutral by 2050. It is merely a statement of United's aspirational *goal*, one that cannot possibly be achieved for another *26 years*. But even if United's goal statement could be construed as a promise of future performance, Plaintiff has not plausibly alleged that United lacked an intention to perform. Rather, the Complaint is supported only by Plaintiff's conclusory assertion—bereft of factual support— that air travel cannot be made 100% green or carbon neutral. *See, e.g.*, Compl. ¶¶ 99, 106. This is insufficient to survive dismissal. *See Jewell*, 2021 WL 1235836, at *12 ("[A]n an allegation of an intention not to perform must be predicated on sufficient facts and not be phrased in merely conclusory terms.") (quotation omitted).

In a particularly persuasive opinion, a District of Columbia court considered and rejected nearly identical claims that a company misled consumers by stating forward-looking environmental goals. In *Earth Island Institute v. The Coca-Cola Company*, No. 2021 CA 001846 B, 2022 WL 18492133 (D.C. Super. Nov. 10, 2022), the court addressed claims that Coca-Cola misled consumers by publicizing a goal to "make 100% of our packaging recyclable by 2025" and to "use at least 50% recycled material in our packaging by 2030." *Id.* at *3. The court held that these statements were "future goal[s] that cannot yet be measured." *Id.* "As future, aspirational goals, these statements cannot successfully create a valid claim under the [District of Columbia Consumer Protection Act] until they have been found to be inaccurate or misleading." *Id.* In a particularly apt passage, the court supported its opinion with the following reasoning that squarely applies to this case:

> [T]he law does not regulate expectations. Moreover, goals cannot be promises. In any event, how does Earth Island Institute or a reasonable juror decide that Coca-Cola's future goals cannot be met. Would Earth Island Institute make the same allegation about a manufacturer who promised aircraft in 1900, a President in 1961

16

who promised to land a person on the moon and return that person safely to Earth by 1970, or an entrepreneur whose goal in 2000 was to have more than 95% of Americans owning a cellular phone in 2021.

*Id.* at *6. Simply put, courts should not be put in the position of determining whether a company is committed to achieving an aspirational goal that is years (or in United's case, decades) into the future. *Id.* Other courts are in accord. *See, e.g.*, *Myers v. Starbucks Corp.*, 2020 WL 13302437, at *4 (C.D. Cal. July 29, 2020) (holding "aspirational language" about what Starbucks' "aims" and what it "promotes" and "supports" could not constitute misrepresentations); *Barber v. Nestlé USA, Inc.*, 154 F. Supp. 3d 954, 962–64 (C.D. Cal. 2015) (finding complaint failed to plead misrepresentations where the "statements [were] aspirational"); *Ruiz v. Darigold, Inc.*, 2014 WL 5599989, at *4 (W.D. Wash. Nov. 3, 2014) (dismissing consumer protection claim related to statement concerning company's efforts to address animal well-being, holding that the "statement is forward-looking and cannot be reasonably interpreted as a promise that Darigold already had in place measures to protect and enhance animal well-being or that such measures had been (or would be) 100% effective").

Accordingly, even if Plaintiff could plead with more specificity, it would not salvage his claim based upon United's aspirational, forward-looking goal statement.

### 2.     United's Alleged Eco-Skies Program.

Plaintiff says even less about the alleged "Eco-skies program" referenced in the Complaint. His allegations include nothing more than two still images of an airplane and fuel tank with the phrase "Eco-Skies" on them. *See* Compl. ¶¶ 18, 24. Parroting the language of the Federal Trade Commission's "Green Guides," Plaintiff perfunctorily declares that the phrase is an unqualified "[g]eneral environmental benefit claim" and therefore deceptive. *See* Compl. ¶¶ 19–20.[2] But the

---

[2] Plaintiff's attempt to use the FTC Green Guides to bolster his anemic allegations should be rejected. The Green Guides do not create a private right of action, nor does allegedly making statements inconsistent with

phrase "Eco-Skies" is not a "claim" at all. It does not say or purport to say anything about United's sustainability goals or commitments. Plaintiff alleges the legal conclusion that this phrase "misrepresents . . . the environmental impact of flying," but does not provide any facts to support or explain that conclusion. *See id.* ¶ 19. As with the other alleged misleading statements in the Complaint, Plaintiff also gives no information about where or when he saw the phrase "Eco-Skies." Did Plaintiff take the picture of the airplane and fuel tank in the complaint? Are those images pulled from advertisements? The Complaint does not answer those questions. Nor does Plaintiff allege which flight(s) the phrase purportedly caused him to purchase and/or pay a premium for, or how and why he relied on the phrase in making these unidentified purchases.  Rule 9(b) demands much more.

### 3.   United's Use of Sustainable Aviation Fuel.

Plaintiff's attacks on United's statements regarding its use of SAF also fail. First, in the Complaint's **only** example of a statement identified with some semblance of specificity, Plaintiff includes what appears to be an image of a December 1, 2021 Tweet by United about its history-making passenger flight using SAF. Compl. ¶ 16. The problem for Plaintiff, however, is that he does not allege (nor could he allege) that this Tweet was false or misleading. United unquestionably operated the flight at issue[3], and Plaintiff does not allege otherwise. Aside from citing one plainly

---

the Green Guides support allegations of misleading statements or reasonable reliance. *See Nirala v. Adhali*, No. 8:18-CV-03330-PX, 2019 WL 3457661, at *6 (D. Md. July 31, 2019) (Xinis, J.) (noting that the FTC Act does not allow a private cause of action); *Curtis v. 7-Eleven, Inc.*, No. 21-CV-6079, 2022 WL 4182384, at *16 (N.D. Ill. Sept. 13, 2022) (dismissing deceptive practices claim based on misrepresentations about recyclability and rejecting plaintiff's argument that alleged Green Guides violations supported the claim, holding "[i]t is not clear how useful those Green Guides are when evaluating the views of a reasonable consumer," because the "average consumer … probably doesn't have the FTC's policy statements at his or her fingertips" when purchasing goods or services).

[3] *See* U.S. Department of Energy, United Airlines' First Passenger Flight Using 100% Sustainable Aviation Fuel Is Officially Off the Ground!, *available at* https://www.energy.gov/energysaver/articles/united-airlines-first-passenger-flight-using-100-sustainable-aviation-fuel (last visited February 12, 2024). For purposes of this motion to dismiss, the Court may take judicial notice of the information on government

accurate Tweet, Plaintiff pivots back to the same conclusory and threadbare allegations that permeate the Complaint. He again inserts two snippets of photographs of purported advertisements promoting United's use of SAF, without providing any detail regarding where and when Plaintiff allegedly saw the advertisements. Compl. ¶¶ 24–25. Plaintiff nonetheless claims that these images are misleading because (1) the very use of the word "sustainable" misleads consumers, and (2) the images purportedly do not disclose that United's SAF usage is "de minimus." *Id.* ¶¶ 26–41. Both of these assertions should be rejected.

First, calling this fuel source "Sustainable Aviation Fuel" is not misleading. This is not a term coined by United. It is the terminology used by the United States Government and the International Civil Aviation Authority ("ICAO"), a United Nations agency, to describe the type of fuel referenced in United's marketing statements.[4] And, as Plaintiff's complaint acknowledges, it is the terminology utilized within the airline industry, including by its international trade association, the International Air Transport Association ("IATA"), domestic trade association Airlines for America, and other airlines. Compl. ¶ 35 (citing IATA statement utilizing the term "SAF").[5] Under these circumstances, it is simply not plausible that the mere use of the word

---

websites. *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 180 n.7 (D. Md. 2022) ("Broadly speaking, the Court may also take judicial notice of 'factual information found on the world wide web.'") (quoting *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007)).

[4] *See, e.g.*, U.S. Department of Energy, Bioenergy Technologies Office: Sustainable Aviation Fuels Website, *available at* https://www.energy.gov/eere/bioenergy/sustainable-aviation-fuels (last visited February 12, 2024); Federal Aviation Administration, Sustainable Aviation Fuels, *available at* https://www.faa.gov/about/office_org/headquarters_offices/apl/aee/technology_operations (last visited February 12, 2024); White House, Fact Sheet: Biden Administration Advances the Future of Sustainable Fuels in American Aviation (Sept. 9, 2021), *available at* https://www.whitehouse.gov/briefing-room/statements-releases/2021/09/09/fact-sheet-biden-administration-advances-the-future-of-sustainable-fuels-in-american-aviation/ (last visited February 12, 2024); International Civil Aviation Organization Webpage on Sustainable Aviation Fuel, *available at* https://www.icao.int/environmental-protection/pages/SAF.aspx (last visited February 12, 2024).

[5] *See also, e.g.*, Airlines for America (A4A), U.S. Airlines Announce 3-Billion-Gallon Sustainable Aviation Fuel Production Goal (Sept. 9, 2021), *available at* https://www.airlines.org/news/u-s-airlines-announce-3-

"sustainable" in conjunction with the term "sustainable aviation fuel" would mislead a typical consumer. Rather, all Plaintiff has alleged is that United uses a widely accepted industry term for this type of fuel.

With respect to Plaintiff's allegation that United's advertisements were misleading because they did not disclose that United's SAF usage is "de minimis," his lack of specificity again dooms his claim. Without pleading where or when these statements about SAF were disseminated or the context surrounding their dissemination, there is simply no way for Plaintiff to plausibly allege that the statements were misleading or that he reasonably relied upon them. Again, "a statement cannot be viewed in a vacuum; rather, it must be viewed in the context in which it was made, along with other representations to the consumer." *Botts*, 2021 WL 1561520, at *19. But Plaintiff provides none of that context. United makes detailed disclosures on a regular basis concerning its SAF usage, and it is impossible to tell whether Plaintiff's undated, cropped images were accompanied by such disclosures and would have misled a reasonable consumer in context. For example, United has an entire page of its website dedicated to explaining the details of its SAF program and clearly disclosing, among other things, that United "still [has] a long way to go to achieve net zero by 2050, as currently only 0.1% of [its] overall fuel usage is SAF." *See* https://www.united.com/en/us/fly/company/responsibility/sustainable-aviation-fuel.html (last visited February 12, 2024). The law simply does not allow Plaintiff to survive a motion to dismiss

---

billion-gallon-sustainable-aviation-fuel-production-goal/ (last visited February 12, 2024); Southwest Airlines, Sustainable Aviation Fuels (SAF), *available at* https://www.southwest.com/citizenship/planet/sustainable-aviation-fuels/ (last visited February 12, 2024); Delta Airlines, Sustainable Aviation Fuel, *available at* https://news.delta.com/tags/sustainable-aviation-fuel (last visited February 12, 2024); American Airlines, Sustainable Aviation Fuel, *available at* https://news.aa.com/esg/climate-change/sustainable-aviation-fuel/ (last visited February 12, 2024); jetBlue, Climate Leadership, *available at* https://www.jetblue.com/sustainability/climate-leadership (last visited February 12, 2024).

using "blatantly cherrypicked" images from various, unknown sources and calling them misrepresentations. *See Earth Island Institute*, 2022 WL 18492133, at *7.

**B.    Plaintiff Fails to Allege a Cognizable Injury Under The MCPA.**

Plaintiff's MCPA claim also fails because the injury that he implausibly alleges is not a cognizable injury under the statute. To satisfy the injury requirement under the MCPA, Plaintiff must show an "objectively identifiable" injury by "point[ing] to some amount that it would take to remedy the loss the plaintiff incurred as a result of the [] alleged deceptive trade practices." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 684 (D. Md. 2010) (citation omitted). The MCPA's injury requirement is not satisfied when the complaint alleges merely a "hypothetical price concession" as a result of the alleged misrepresentation. *Id.* at 684.

A pair of cases from this district—*Jones*, *supra*, and *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575 (D. Md. 2014)—are directly on point and foreclose Plaintiff's MCPA claim. In *Jones*, the plaintiff alleged that the defendant violated the MCPA by failing to disclose that the car she purchased was previously used as a short-term rental. *Id* at 683. For her injury, the plaintiff claimed that she either (1) would not have purchased the car, or (2) would have paid significantly less for it had she known the truth. *Id*. at 684. Importantly, however, the plaintiff failed to allege that she had incurred any concrete financial harm, such as additional repair costs, based on the car's prior use as a rental. *Id.* Accordingly, the Court dismissed the MCPA claim, reasoning that "[a] hypothetical price concession is simply not the type of tangible injury appropriately recognized in a private MCPA action, as virtually any misrepresentation could support such a claim of injury." *Id*. The court in *Chambers* reached the same conclusion, dismissing claims under the MCPA for lack of injury where "Plaintiff assert[ed] that she paid significantly more for the [product] than it was worth [because of the alleged deception] and was thus overcharged." 43 F. Supp. 3d at 622.

Plaintiff's injury claims are identical to those at issue in *Jones* and *Chambers*. By alleging merely that he chose to fly United and paid a price premium because of the challenged statements, Plaintiff has failed to plead—and could not plausibly plead—a cognizable claim under the MCPA.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, United respectfully requests that this Court dismiss the Complaint in its entirety with prejudice.


Dated: February 12, 2024                    /s/ *Sondra A. Hemeryck*
                                            Sondra A. Hemeryck

                                            Laura Basem Jacobs, Bar # 03142
                                            Thomas F. Stowe, Bar # 30556
                                            Budow and Noble, P.C.
                                            12300 Twinbrook Pkwy., Suite 540
                                            Rockville, MD 20852
                                            Tel.    301-654-0896
                                            Fax     301-907-9591
                                            ljacobs@budownoble.com
                                            tstowe@budownoble.com

                                            Sondra A. Hemeryck (*pro hac vice*)
                                            Eli J. Litoff (*pro hac vice*)
                                            Riley Safer Holmes & Cancila LLP
                                            70 W. Madison Street, Suite 2900
                                            Chicago, IL 60602
                                            Tel.    312-471-8700
                                            Fax     312-471-8701
                                            shemeryck@rshc-law.com
                                            elitoff@rshc-law.com

                                            *Attorneys for Defendant United Airlines, Inc.*

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of February, 2024, a copy of the foregoing

**United Airlines, Inc.'s Motion to Dismiss Plaintiff's Class Action Complaint** was served via

ECF/CMS to:

> Spencer Sheehan, Esq.
> Sheehan & Associates, P.C.
> 60 Cuttermill Road, Suite 412
> Great Neck, NY 11021
> *Lead Counsel for Plaintiff*

/s/ *Sondra A. Hemeryck*
Sondra A. Hemeryck

Laura Basem Jacobs, Bar # 03142
Thomas F. Stowe, Bar # 30556
Budow and Noble, P.C.
12300 Twinbrook Pkwy., Suite 540
Rockville, MD 20852
Tel.     301-654-0896
Fax     301-907-9591
ljacobs@budownoble.com
tstowe@budownoble.com

Sondra A. Hemeryck (*pro hac vice*)
Eli J. Litoff (*pro hac vice*)
Riley Safer Holmes & Cancila LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
Tel.     312-471-8700
Fax     312-471-8701
shemeryck@rshc-law.com
elitoff@rshc-law.com

*Attorneys for Defendant United Airlines, Inc.*

23